UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-cr-00012-MMD-CSD-1 |
| Plaintiff, | ORDER |
| v. | |
| SHANA LEE RUBIN, | |
| Defendant. | |

## I.   SUMMARY

Defendant Shana Lee Rubin was indicted on a single count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). (ECF No. 1.) Before the Court is Rubin's motion to suppress (ECF No. 26 ("Motion")) all evidence resulting from the placement and use of a GPS tracking device on a vehicle driven by Rubin.[1] As further explained below, because the Court finds that the government exceeded the scope of its search warrant, the Court will grant the Motion.

## II.   FACTUAL BACKGROUND

The Court relies on documents filed by the parties in support of the Motion and related briefs to construct this factual background.

### A.   Search Warrant Application and Affidavit

On January 6, 2022, Detective Uriel Collazo applied for a search warrant from the First Judicial District Court of the State of Nevada in Carson City. (ECF Nos. 26-1, 26-2.) The application requested a search warrant authorizing the placement of a GPS tracking

---

[1]The government filed a response (ECF No. 32), and Rubin filed a reply (ECF No. 33). Rubin requested an evidentiary hearing on the Motion (ECF No. 26 at 1), but the Court determined that an evidentiary hearing was not necessary to resolve the Motion. However, the Court heard oral argument on the Motion ("the Hearing"). (ECF No. 40.)

device on "the vehicle described as a White General Motors Company pickup, bearing Nevada license plate 985M46 belonging to Alan James Morgan." (ECF No. 26-1 at 10.) In the application, Detective Collazo states that he is the lead investigator for a series of possible crimes related to controlled substances "committed by Alan James Morgan" and that "[t]here is probable cause to believe that evidence of the above-listed offenses will be found by placing a GPS tracking device on" Morgan's white pickup. (*Id.* at 2-3.)

In support of the application, Detective Collazo submitted an affidavit describing an investigation starting in March 2021 by the Tri-NET Narcotic Task Force and Drug Enforcement Administration ("DEA") Special Agents of "a Methamphetamine, Heroin, and counterfeit M30 Fentanyl pill drug supplier out of Woodland, California." (*Id.* at 3.) The affidavit also describes this drug supplier's use of "runners" to deliver the illegal narcotics. (*Id.*) In September 2021, law enforcement arrested one of these "runners" who then provided information that she regularly transported drugs to Morgan, that Morgan would sometimes go to California to pick up large quantities of drugs himself, and that Morgan drives a white GMC pickup bearing Nevada license plate number 985M46. (*Id.* at 4-5.) In December 2021, a confidential informant also provided information to Detective Collazo that Morgan has traveled to Carson City several times to distribute narcotics. (*Id.* at 5-6.) Law enforcement obtained further information on Morgan consistent with involvement in drug trafficking from a criminal history check on Morgan, through surveillance of Morgan's residence, and from a DEA Special Agent regarding communication between Morgan and the California drug supplier. (*Id.* at 6-7.)

## B. Search Warrant and Amendment

The presiding judge issued the requested search warrant on January 6, 2022. (ECF No. 26-2.) The search warrant states that "there is probable cause to believe that [crimes related to controlled substances] were committed by Alan James Morgan," that "evidence of said crime may be found through monitoring the current location and location history of a White General Motors Company pickup, bearing Nevada license plate 985M46," and that "installation of a GPS tracking device on said vehicle is likely to allow investigators to

positively locate Alan James Morgan and provide information and insight into possible drug transactions and the crimes listed herein." (*Id.* at 2.) The warrant authorized the application of a GPS tracking device to the white pickup and monitoring of the device for 30 days from the time of placement. (*Id.* at 3.)

On January 6, 2022, law enforcement placed a GPS tracking device on the white pickup and began monitoring it. (ECF No. 26-4; ECF No. 32 at 4.) It was active until January 21, 2022. (*Id.*) The white pickup was parked at 56 South Park Street, Powning Addition, Reno when the GPS tracking device was first activated. (ECF No. 26-4.)

On January 7, 2022, Detective Collazo sought an amendment to the January 6, 2022 search warrant. (ECF No. 26-3 at 2.) The transcript of the telephonic hearing indicates the following as pertinent to the warrant. Detective Collazo stated that while law enforcement was doing surveillance on Morgan's residence at 1120 Locust Street, Reno, they discovered that Morgan came out of his house, got into a newer GMC pickup with a temporary tag, and was driving it around town. (*Id.*) Law enforcement "positively identified him," they "checked that vehicle through Carson City Dispatch," and "it came back to Alan James Morgan." (*Id.*) Detective Collazo clarified with the judge that this vehicle was a blue 2009 GMC pickup and that nothing "by way of [their] probable cause [had] changed." (*Id.* at 4.) The judge then "authorize[d] Detective Collazo to sign [his] name to an amendment to the warrant to add a GPS tracking device to the GMC pickup that's described." (*Id.*)

### C.    Morgan's Arrest and Continued GPS Tracking

On January 12, 2022, law enforcement conducted surveillance on Morgan's residence and arrested Morgan for possession of methamphetamine, counterfeit M30 fentanyl tablets, and cocaine. (ECF No. 26-5 at 5.) Through investigation, law enforcement "learned that since Morgan's incarceration (January 12 2022), Rubin was driving Morgan's white GMC pickup bearing 985M46." (*Id.*)

On January 20, 2022, Detective Collazo learned that Rubin—known as "Morgan's girlfriend"—recently traveled to California to purchase methamphetamine and heroin from

the California drug supplier and that Rubin "was going to sell these narcotics and use the money to post Morgan's bail." (*Id.*)

On January 21, 2022, through the use and monitoring of the GPS tracking device, law enforcement learned the white pickup was in the Walmart parking lot located at 3200 Market Street in Carson City and subsequently "responded to Wal[m]art and established surveillance on the pickup." (*Id.*; ECF No. 32 at 5.) Sergeant Gregory Prestipino observed Rubin and a young boy, later identified as her son, leave Walmart and approach the white pickup. (ECF No. 26-5 at 5.) Sgt. Prestipino then observed Rubin engage in what appeared to law enforcement as a possible drug transaction with an individual later identified as Terry Ann Bausback. (*Id.* at 6.)

Law enforcement then followed both Rubin and Bausback's vehicles as they exited the Walmart parking lot. (*Id.*) Law enforcement conducted traffic stops on both Rubin and Bausback's vehicles after they both failed to stop behind the limit line at a stop sign. (*Id.*) Detective Collazo interviewed Rubin, and she "admitted to selling Bausback $260.00 worth of [m]ethamphetamine" in the Walmart parking lot. (*Id.*) Law enforcement found the methamphetamine in Bausback's vehicle. (*Id.* at 7.) Rubin "admitted she recently traveled to Woodland, California to meet with a drug supplier" and "to find out if the drug supplier would bail out Morgan." (*Id.*) Rubin traveled back to Reno with methamphetamine and heroin from the drug supplier. (*Id.*) Rubin informed law enforcement that she had stored three pounds of the methamphetamine in her dark blue BMW sedan. (*Id.*) Rubin "gave written and verbal consent to search her BMW sedan for the narcotics" and handed three packages of the narcotics from the car to Sgt. Prestipino. (*Id.* at 7-8.) Rubin also permitted law enforcement to seize narcotics from her motel room. (*Id.* at 8.) Law enforcement found methamphetamine, heroin, and diazepam in Rubin's motel room. (*Id.*) Rubin informed Detective Collazo that the heroin came from the drug supplier in California. (*Id.* at 9.)

On February 17, 2022, the government indicted Rubin on a single count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). (ECF No. 1.)

4

1   **III.   DISCUSSION**

2       The Court first addresses whether Rubin has standing to challenge the GPS

3   tracking of the white pickup, then whether the continued GPS tracking exceeded the scope

4   of the search warrant.

5       **A.   Standing**

6       The government argues that Rubin has not met her burden of demonstrating she

7   has standing to challenge the location data obtained by GPS tracking of the white pickup.

8   (ECF No. 32 at 8.) "To invoke the Fourth Amendment protections, a person must show

9   that [they] had a legitimate expectation of privacy." *U.S. v. Shryock*, 342 F.3d 948, 978

10  (9th Cir. 2003) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). An expectation of

11  privacy is legitimate if it is one that society accepts as objectively reasonable. *See*

12  *Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990); *California v. Greenwood*, 486 U.S. 35, 39-

13  40 (1988).

14      "The Fourth Amendment shields not only actual owners, but also anyone with

15  sufficient possessory rights over the property searched." *Lyall v. City of Los Angeles*, 807

16  F.3d 1178, 1186 (9th Cir. 2015). "[A] defendant who lacks an ownership interest may still

17  have standing to challenge a search, upon a showing of 'joint control' or 'common

18  authority' over the property searched." *United States v. Thomas*, 447 F.3d 1191, 1198 (9th

19  Cir. 2006) (citation omitted). "Common authority rests 'on mutual use of the property by

20  persons generally having joint access or control for most purposes.'" *Id*. For example, "a

21  defendant may have a legitimate expectation of privacy in another's car if the defendant

22  is in possession of the car, has the permission of the owner, holds a key to the car, and

23  has the right and ability to exclude others, except the owner, from the car." *Id*. at 1198 (9th

24  Cir. 2006).

25      The government argues that Rubin points to no evidence that Morgan—the owner

26  of the vehicle—had granted her permission to drive the white pickup either generally or on

27  January 21, 2022. (ECF No. 32 at 9.) In her reply, Rubin argues that it is an incorrect

28  statement of law that she "must show she had permission to drive the truck" and points to

5

the general "common authority" standard in *Thomas*. (ECF No. 33 at 2.) However, the relevant case law largely supports a reading of the "joint control" or "common authority" standard regarding vehicles as requiring the permission of the owner or an authorized driver of the vehicle. *See Thomas*, 447 F.3d at 1198-99; *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980). Even so, the Court disagrees with the government and finds that there is sufficient circumstantial evidence to demonstrate that Rubin was permitted by Morgan to drive the white pickup.

The government concedes that Rubin "drove the white pickup at times, and certainly after Morgan's arrest on January 12, 2022." (ECF No. 32 at 10.) The vehicle was parked at an address purportedly associated with Rubin on January 6, 2022—the day the GPS tracking began—and at several times throughout the surveillance period, which the government does not dispute. (ECF No. 26 at 3-4; ECF No. 26-4.) There is no indication that the vehicle was reported stolen on or after January 6, 2022. The transcript of the search warrant amendment hearing indicates that on January 7, 2022, Morgan was observed driving in a newer blue GMC pickup that he also owned. (ECF No. 26-3 at 3-4.) The case report written by Detective Collazo indicates that through investigation, detectives "learned that since Morgan's incarceration (January 12, 2022), [Rubin] was driving Morgan's white GMC pickup." (ECF No. 26-5 at 5.) Law enforcement also confirmed that the white pickup was registered to Morgan, who was known to be Rubin's boyfriend. (ECF No. 26-1 at 5; ECF No. 26-5 at 5.) The Court finds that, taken together, these facts establish that Rubin was permitted to drive the white pickup during the GPS tracking period from January 6, 2022 to January 21, 2022. *See United States v. Sconiers*, Case No. 1:21-cr-00267 JLT, 2023 WL 425818, *4 (E.D. Cal. Jan. 26, 2023) (similar analysis).

Rubin was undoubtedly in possession of the car and held a key to the car during the times she drove the white pickup. Detective Collazo indicated in the case report and the government concedes that she was the driver of the car at least since January 12, 2022, and therefore she was in control of the car and had the keys. (ECF No. 26-5 at 5;

1    ECF No. 32 at 10.) As the driver with keys to the car and permission to drive it, Rubin had

2    the right and ability to exclude others, except Morgan. For instance, on January 21, 2022,

3    Rubin was observed driving the car with her son. (ECF No. 26-5 at 5-6.) As she was the

4    driver of the car who possessed the keys and controlled the movement of the car, Rubin

5    made the decision to permit her son to enter the car. *See United States v. Poblete*, Case

6    No. 2:11-cr-00189-RLH, 2012 WL 5879742, *11 (D. Nev. Oct. 31, 2012), *report and*

7    *recommendation adopted*, Case No. 2:11-cr-189-RLH-VCF, 2012 WL 5879798 (D. Nev.

8    Nov. 20, 2012) (similar analysis). Accordingly, Rubin has satisfied the four "common

9    authority" factors identified in *Thomas*, demonstrated a legitimate expectation of privacy

10   in the white pickup, and therefore established standing to challenge the GPS tracking of

11   the white pickup.[2]

12        **B.    Whether Search Exceeded Scope of Warrant**

13        Rubin does not challenge the validity of the search warrant but rather challenges

14   the continued placement and monitoring of the GPS tracking device as unreasonable after

15   law enforcement became aware that Morgan was no longer driving the white pickup. (ECF

16   No. 26 at 5-6, 10-11.) The issue here is essentially whether the continued GPS tracking

17   was conducted within the scope of the warrant. "If the scope of [a] search exceeds that

18   permitted by the terms of a validly issued warrant . . ., the [search and any] subsequent

19   seizure [are] unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140

20   (1990). "Whether a search exceeds the scope of a search warrant is an issue [courts]

21   determine through an objective assessment of the circumstances surrounding the

22   issuance of the warrant, the contents of the search warrant, and the circumstances of the

23   search*." United States v. Hitchcock*, 286 F.3d 1064, 1071 (9th Cir.), *opinion amended and*

24

25   _____

26   [2]Because there was no evidence obtained from a search of the interior of the white
     pickup itself but rather the relevant evidence obtained was Rubin's location data on
27   January 21, 2022 from extended GPS tracking of the vehicle, Rubin potentially also has
     standing under *Carpenter v. United States. See* 138 S. Ct. 2206, 2215 (2018) ("'[L]onger
28   term GPS monitoring in investigations of most offenses impinges on expectations of
     privacy—regardless whether those movements were disclosed to the public at large.")
     (citing concurrences in *United States v. Jones*, 566 U.S. 400, 415, 430 (2012)).

1    *superseded on other grounds*, 298 F.3d 1021 (9th Cir. 2002); *see, e.g.*, *United States v.*

2    *Hurd*, 499 F.3d 963, 966-69 (9th Cir. 2007) (application of the *Hitchcock* test)).

3                    **1.    Circumstances surrounding the issuance of the warrant**

4            On January 6, 2022, Officer Collazo applied for a warrant authorizing the placement

5    of a GPS tracking device on the white pickup belonging to Morgan. (ECF No. 26-1 at 10.)

6    In support of the warrant application, Officer Collazo submitted an affidavit setting forth

7    probable cause for the requested GPS tracking. (*Id.* at 3-7.) The affidavit largely describes

8    Morgan involved in alleged drug trafficking schemes sometimes with the use of his white

9    pickup truck. (*Id.*) The government emphasizes that Officer Collazo explained in the

10   affidavit that observing the white pickup will "provide insight into [Morgan]'s direction of

11   travel, as well as information regarding the whereabouts of individuals who may be

12   assisting [Morgan] in eluding from law enforcement, specifically individuals who are

13   associated with the vehicle." (ECF No. 32 at 4; ECF No. 26-1 at 7.) The application

14   specifically seeks a warrant authorizing the placement of a GPS tracking device on

15   Morgan's white pickup for the purpose of obtaining detailed tracking and location history

16   on the vehicle for 30 days from the date of placement "to monitor and locate [Morgan], and

17   other persons engaged in assisting [Morgan] in committing crimes described in this

18   Affidavit." (ECF No. 26-1 at 10.)

19           While the application and affidavit for the warrant describes the nature of drug

20   trafficking schemes as involving multiple people and appears to seek to also monitor other

21   individuals associated with the white pickup or assisting Morgan in committing crimes, the

22   application and affidavit clearly indicate that the probable cause the warrant rests on is

23   probable cause that evidence of crimes "committed by Alan James Morgan" will be found

24   by placing a GPS tracking device on Morgan's white pickup. (ECF No. 26-1 at 3, 7.) And

25   the information provided in the application and affidavit supporting such probable cause

26   largely pertains only to Morgan. That is, the application and affidavit include information

27   from: (1) one of the arrested "runners" and a confidential informant specifically about

28   Morgan's involvement in drug trafficking; (2) a criminal history check on Morgan; (3) law

1    enforcement surveillance conducted on Morgan's residence; and (4) a DEA Special Agent

2    regarding communication between Morgan and the California drug supplier. (*Id.* at 5-7.)

3    The Court therefore finds that probable cause here was specifically tied to Morgan and

4    not necessarily his white pickup or any "associates."

5         The government argues that warrants need not be tied to specific individuals (ECF

6    No. 32 at 11), but if the government intended the warrant to be tied specifically to the white

7    pickup, the government needed more to establish that there was probable cause that the

8    truck was being used by individuals other than Morgan in furtherance of a crime. The

9    affidavit only references the white pickup as being driven by Morgan and was therefore

10   insufficient to support such probable cause. (ECF No. 26-1 at 5, 6.) As Rubin notes and

11   the Court agrees, the affidavit also "did not establish any specifics about [Morgan]'s

12   alleged 'associates' except for the confidential informant who was already known to law

13   enforcement and two other individuals" who were already apprehended by police and not

14   associated with the white pickup.[3] (ECF No. 33 at 4; ECF No. 26-1 at 4-6.)

15        Moreover, the warrant is only sufficiently tied to Morgan because the warrant itself

16   only names Morgan and indicates "there is probable cause to believe that [crimes] were

17   committed by Alan James Morgan" and that "installation of a GPS tracking device on [the

18   white pickup] is likely to allow investigators to positively locate Alan James Morgan and

19   provide information and insight into possible drug transactions and the crimes listed

20   herein." (ECF No. 26-2 at 2.) In addition, the presiding judge permitted amendment of the

21   warrant the following day to add a GPS tracking device to a different blue GMC pickup

22   based on the fact that Morgan was observed driving that new truck, and officers indicated

23   during that amendment hearing that nothing regarding their probable cause had changed.

24   (ECF No. 26-3 at 3-4.) This further indicates that the probable cause supporting the

25

26

27   _____

28        [3]The names of the two associates apprehended by police were redacted in the
     exhibit the Court received and reviewed. (ECF No. 26-1.) At the Hearing, the government
     confirmed that none of the redacted names were Rubin's.

1   January 6, 2022 warrant and the January 7, 2022 amendment was directly tied to Morgan,

2   not his white pickup truck.

3          Accordingly, an objective assessment of the circumstances surrounding the

4   issuance of the warrant does not support the conclusion that the issuing judge authorized

5   the GPS tracking of the white pickup while driven exclusively by someone other than

6   Morgan—such as Rubin.

7                    **2.      Contents of the search warrant**

8          The Fourth Amendment requires that search warrants be specific. "Specificity has

9   two aspects: particularity and breadth. Particularity is the requirement that a warrant must

10  clearly state what is sought. Breadth deals with the requirement that the scope of the

11  warrant be limited by the probable cause on which the warrant is based." *United States v.*

12  *Towne*, 997 F.2d 537, 544 (9th Cir. 1993) (internal quotation marks and citations omitted).

13  The particularity requirement of the Fourth Amendment "ensures that the search will be

14  carefully tailored to its justifications, and will not take on the character of the wide-ranging

15  exploratory searches the [f]ramers intended to prohibit." *Maryland v. Garrison*, 480 U.S.

16  79, 84 (1987).

17         Here, as noted, the January 6, 2022 warrant authorized the placement of a GPS

18  tracking device to Morgan's white pickup for the purposes of acquiring tracking and

19  location history on the vehicle for 30 days from the time of placement. (ECF No. 26-2 at

20  3.) Again, the warrant itself only names Morgan and no other individuals on which probable

21  cause is based. (*Id.* at 2-3.) The government argues that the affidavit "was specifically

22  incorporated by reference into the warrant itself." (ECF No. 32 at 4.) While that is indeed

23  true (ECF No. 26-2 at 2), the affidavit cannot expand the scope of the warrant. *See United*

24  *States v. Sedaghaty*, 728 F.3d 885, 913 (9th Cir. 2013) ("We have never held that an

25  affidavit could expand the scope of a legitimate warrant beyond its express limitations nor

26  do we do so here."). Because "[t]he scope of [a] warrant [is] limited by the probable cause

27  on which the warrant is based," the warrant here is limited by the probable cause linked

28  to Morgan. *See Towne*, 997 F.2d at 544.

At the Hearing, the government concedes that there would be some cutoff point for the warrant—besides the authorized 30-day cutoff—at which point continued GPS tracking would not be reasonable. The government argues that that cutoff point had not been reached here because the warrant allowed law enforcement to continue to track the white pickup after Morgan's arrest to obtain evidence of the same drug trafficking conspiracy. But as already discussed, the government bases that on allegations in the affidavit that are insufficiently specific and cannot be used to expand the scope of the warrant on its face. If the probable cause on which the warrant is based is tied to someone who is later taken into custody, as here, then it is clear that the cutoff point at the latest would be when that target was taken into custody.

Accordingly, once it became clear that Morgan was no longer driving the white pick-up and certainly after Morgan was arrested on January 12, 2022 (ECF No. 26-5 at 5), the warrant could not reasonably authorize continued GPS tracking of the white pickup. An objective assessment of the contents of the search warrant indicates that the GPS tracking of the white pickup starting January 12, 2022 at the latest was not authorized by the warrant.

### 3.    Circumstances of the search

The Supreme Court has held that the government's placement of a GPS device on a motor vehicle and use of that device to monitor the vehicle's movements constitutes a search within the meaning of the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 404 (2012). In *Jones*, the majority opinion focused on the trespassory nature of the intrusion to find a search. *See id.* at 404-05 ("The [g]overnment physically occupied private property for the purpose of obtaining information."). "Since GPS monitoring of a vehicle tracks 'every movement' a person makes in that vehicle, the concurring Justices [in *Jones*] concluded that 'longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy'—regardless whether those movements were disclosed to the public at large." *Carpenter v. United States*, 138 S. Ct. 2206 (2018) (citations omitted).

1    Here, the government physically occupied private property—Morgan's white pickup

2    over which Rubin asserted joint control—when law enforcement placed the GPS tracker

3    on the vehicle on January 6, 2022. (ECF No. 32 at 4; ECF No. 26-4.) And the government

4    conducted prolonged GPS monitoring of the white pickup that essentially tracked Rubin's

5    "every movement" during the surveillance period. (ECF No. 26-4.) Under *Jones* and

6    *Carpenter*,[4] the Court finds that the GPS monitoring of the white pickup constituted a

7    search within the meaning of the Fourth Amendment.

8    The government argues that even if the search exceeded the scope of the warrant,

9    Rubin had no reasonable expectation of privacy in the white pickup's public movements

10   under *Jones* because she is "not challenging the physical intrusion of the placement of the

11   GPS device." (ECF No. 32 at 17.) The government points to a portion of *Jones* that states

12   it does not answer the question of whether GPS tracking "without an accompanying

13   trespass" is an "unconstitutional invasion of privacy" and argues pre-*Jones* precedent

14   answers that question in the negative. (*Id.*) *See also Jones*, 565 U.S. at 412. However,

15   the Court finds that there was an "accompanying trespass" here when law enforcement

16   did not remove the GPS tracking device when it became unreasonable to continue using

17   it. And despite the fact that Rubin does not directly challenge the initial placement of the

18   GPS device as unlawful, Rubin does in a sense challenge the placement when she argues

19   that law enforcement should have removed the GPS tracker upon learning that she was

20   "the possessor and operator of the vehicle" and refers to the GPS device—not simply its

21   monitoring—as "illegal." (ECF No. 26 at 5, 11.) There is after all no continued tracking

22   without the initial placement. Because the Court has found that Rubin exerted at least joint

23   control over the white pickup, she may validly challenge both the placement and continued

24   use of the GPS tracking device on the white pickup.

25

26

27   _____
         [4]While *Carpenter* did distinguish GPS monitoring of a vehicle from cell-site location
28   information, the Court finds its dicta and discussion of the *Jones* concurrences persuasive
     here.

1    In any event, if the government's argument were accepted, that would permit the

2    government to rely on an initial lawful placement of a GPS tracking device to later excuse

3    or cure continued GPS tracking that exceeds the scope of the warrant that authorized the

4    initial placement. The Court finds that logical conclusion untenable, as it would turn the

5    Fourth Amendment on its head.

6    The government also contends that they continued to receive information after

7    Morgan's arrest that justified the continued GPS tracking of his white pickup. (ECF No. 32

8    at 14-15.) For instance, on January 20, 2022, Officer Collazo learned that Rubin recently

9    traveled to California to purchase methamphetamine and heroin and that she was going

10   to sell these drugs and use the money to post Morgan's bail. (ECF No. 32 at 15; ECF No.

11   26-5 at 5.) While law enforcement may at that point have had probable cause to believe

12   evidence of crimes committed by Rubin could be discovered by tracking the white pickup,

13   if they wished to proceed with the GPS tracking, they were obligated to present that new

14   information to the appropriate judge to determine probable cause and required to obtain a

15   new or amended search warrant targeting Rubin and her use of the vehicle. *See*

16   *Chambers v. Maroney*, 399 U.S. 42, 51 (1970) ("As a general rule, [the Court] has . . .

17   required the judgment of a magistrate on the probable-cause issue and the issuance of a

18   warrant before a search is made."). As evidenced by the January 7, 2022 amendment to

19   the warrant, law enforcement could have timely obtained a new or amended warrant on

20   January 20, 2022, but they failed to do so.

21   Because the government continued GPS tracking of the white pickup truck after

22   Morgan was arrested on January 12, 2022 without obtaining a new or amended warrant

23   targeting Rubin and her use of the vehicle, the government exceeded the scope of its

24   warrant and conducted an unreasonable search in violation of Rubin's Fourth Amendment

25   rights.

26   **C.    Exclusionary Rule and Good Faith Exception**

27   Having found a Fourth Amendment violation, the Court next determines the

28   appropriate remedy under the exclusionary rule. "The prime purpose of the exclusionary

rule is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *U.S. v. Sears*, 411 F.3d 1124, 1128 (9th Cir. 2005) (internal quotation marks and citation omitted). There is no question that the exclusionary rule applies here.

The government argues that even if the execution of the warrant were faulty, the good faith exception to the exclusionary rule applies. (ECF No. 32 at 16.) The Ninth Circuit has held that "the good faith exception to the exclusionary rule permits law enforcement officers reasonably to rely on search warrants that are later determined to be invalid," and therefore, "the good faith exception has no application . . . where there is no dispute about the search warrant's validity, but only about . . . whether the search was conducted within the scope of the warrant[.]" *Hitchcock*, 286 F.3d at 1071. Because the validity of the warrant here is not in dispute, the Court finds that the "good faith" exception cannot apply and rejects the government's argument.

Rubin contends that "the eventual discovery of evidence from [her blue sedan] on January 21, 2022, was the direct fruit of the illegal GPS device and monitoring" and therefore the evidence found must be suppressed under the fruit of the poisonous tree doctrine. (ECF No. 26 at 11-12.) The government does not directly respond to that argument and in fact concedes that the evidence obtained in this case on January 21, 2022 would not have been obtained without the GPS tracking of the white pickup on that day. (ECF No. 32 at 11 n.5.)[5] The Court agrees with Rubin and determines that suppression of Rubin's location data from January 12, 2022 to January 21, 2022 obtained by GPS tracking of the white pickup truck and all evidence stemming from that data,

---

[5]At the Hearing, the government clarified its incomplete sentence in footnote 5 of its response brief and conceded that there is no inevitable discovery or attenuation issue in this case.

including evidence obtained from Rubin's blue sedan and motel room on January 21, 2022, is the proper remedy.[6]

**IV.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Rubin's motion to suppress (ECF No. 26) is granted.

It is further ordered that Rubin's location data from January 12, 2022 to January 21, 2022 obtained by GPS tracking of the white pickup truck and all evidence stemming from that data is suppressed.

DATED THIS 21st Day of April 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]While it appears likely that it became clear to law enforcement that Rubin was the only one driving the white pickup before January 12, 2022, perhaps as early as January 6-7, 2022 (ECF No. 26-3 at 3; ECF No. 26 at 3-4), the Court need not—and does not—reach that specific determination because it does not affect the outcome here, as the evidence Rubin seeks to suppress resulted from location data obtained on January 21, 2022.